**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **O.S., A.S., and D.S.**

**No. 20-0988** (Mingo County 19-JA-76, 19-JA-77, and 19-JA-78)

**MEMORANDUM DECISION**

Petitioner Mother S.S., by counsel Dianna Carter Wiedel, appeals the Circuit Court of Mingo County's November 6, 2020, order terminating her parental rights to D.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cullen C. Younger, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner's parental rights to O.S. and A.S. were previously involuntarily terminated in 2016 due to drug abuse and the circuit court denied petitioner post-termination visitation with those children. As a result of those proceedings, O.S. and A.S. were placed in legal guardianship with the maternal grandmother, L.S.

In April of 2019, petitioner gave birth to drug-exposed D.S. in in the state of Ohio., which resulted in Ohio child welfare authorities opening a case to monitor D.S. and petitioner. After D.S. came home from the hospital, D.S.'s paternal grandparents provided for all his needs and petitioner was passing drug screens. In August of 2019, petitioner relapsed by using methamphetamine and opiates, but continued to live with the paternal grandparents in Ohio and work with the Ohio child welfare authority. By October of 2019, petitioner and D.S. abruptly left the paternal grandparents'

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

residence in Ohio and moved in with the maternal grandmother, L.S., in West Virginia. After petitioner moved in with L.S., the DHHR received a referral and investigated. A Child Protective Services ("CPS") worker initially made contact with L.S. while she was placing the child in the car and observed that D.S. lacked a proper car seat for his age, was sick with a cold, and had an untreated hernia in his stomach. L.S. also stated to the worker that the child likely had not been immunized and had no pediatrician. L.S. claimed that petitioner was not living in the home but had only visited. The worker interviewed petitioner who also stated that she did not live in L.S.'s home. However, during a random visit, the worker discovered some of petitioner's belongings in the home and O.S. and A.S. stated that petitioner had been in the home. The DHHR worker also communicated with the Ohio child welfare worker regarding petitioner's progress in Ohio, and the Ohio child welfare worker stated that she closed the case because petitioner and D.S. now resided in West Virginia. At the conclusion of its investigation, the DHHR filed the underlying petition against petitioner and L.S. in November of 2019 due to petitioner's drug abuse of cocaine and heroin while pregnant with D.S. and subsequent moving in with A.S. and O.S. when post-termination visitation was previously denied by the circuit court.[2]

Thereafter, the circuit court set but continued the adjudicatory hearing for several months to allow the DHHR to obtain records from Ohio. During this time, the parties convened for a multidisciplinary treatment ("MDT") meeting, and the DHHR prepared a family case plan which required petitioner to submit to regular drug screens, exercise supervised visitations, obtain housing and employment, participate in adult life skills and parenting classes, undergo a psychosocial evaluation, attend mental health counseling, and seek inpatient drug treatment. In February, petitioner failed the only drug screen she submitted to during the pendency of the case when she tested positive for fentanyl, methamphetamine, and heroin.

The circuit court held an adjudicatory hearing in June of 2020 wherein petitioner failed to appear, but counsel represented her. Petitioner's counsel proffered that petitioner was recently admitted into inpatient drug rehabilitation. The DHHR worker then testified that she obtained and filed records from Ohio child welfare services, which outlined the months of petitioner's progress, or lack thereof, after D.S.'s birth in April of 2019. The DHHR moved for the admission of those records, and the circuit court granted the motion, ruling that it would consider the records for purposes of adjudication. The circuit court adjudicated petitioner as an abusing parent based upon her drug abuse and violation of the circuit court's previous order forbidding contact with A.S. and O.S. Petitioner's counsel moved for a post-adjudicatory improvement period, and the circuit court granted the motion.

In August of 2020, the circuit court held a dispositional hearing during which petitioner failed to appear, but counsel represented her. Petitioner's counsel proffered that she attempted to contact petitioner at her most recent phone number and e-mail but had not heard from her. Next, the DHHR and guardian recommended termination of petitioner's parental rights based upon her

---

[2]Because L.S. was named as a respondent parent for allowing petitioner to live in the home and violating the circuit court's previous order, A.S. and O.S. were also named as respondent children and assigned case numbers in the matter below. However, L.S. was later dismissed as a party at the adjudicatory hearing and all children remained in her care. O.S. and A.S. remained as respondents for the purpose of adoption by L.S.

"extreme" noncompliance. The DHHR presented testimony that petitioner had been compliant with the terms and conditions of her case plan for only two weeks during the entire pendency of the case. The DHHR worker testified that petitioner had not maintained contact with her counsel or the DHHR. Specifically, petitioner submitted to only one drug screen which showed that she was positive for fentanyl, methamphetamine, and heroin; had not completed drug treatment; had not participated in adult life skills and parenting classes; and had not attended counseling. The worker stated that the only term that petitioner completed was submitting to her psychological evaluation, which recommended that petitioner attend inpatient drug treatment. Significantly, petitioner had not visited with D.S. since the filing of the petition due to her failure to comply with random drug screening. Finally, the worker explained that she contacted the inpatient drug rehabilitation facility that petitioner allegedly enrolled in, and the facility had no record of petitioner as a patient. Having heard the evidence, the circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was necessary for D.S.'s welfare. Petitioner now appeals the circuit court's November 6, 2020, order that terminated her parental rights to D.S.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. According to petitioner, she made "substantial efforts in this matter as indicated by the Ohio CPS records and by her partial compliance with services in Mingo County." Petitioner also notes that "many of the services provided to [petitioner] in Mingo County were provided during the pandemic shut down, from March until the dispositional hearing in August." Petitioner argues that the circuit court erred in failing to consider the services "with which she did comply with in this case." Further, in the conclusion of her brief, petitioner states that the circuit court erred in terminating her parental rights when there was not clear and convincing evidence that she abused

---

[3]D.S.'s father is deceased. According to the parties, the permanency plan for D.S. is adoption by his maternal grandmother, L.S.

and neglected the child. Finally, petitioner appears to also claim that she was not granted an improvement period.

At the outset, we note that petitioner fails to support these arguments. She cites to no specific evidence to contradict the circuit court's factual findings, nor does she cite to any legal authority, other than this Court's standard of review and the statute regarding improvement periods, in support of her arguments. First, petitioner inaccurately claims that she was not granted an improvement period. Second, petitioner cites no barriers or issues she faced due to the pandemic. Third, petitioner concedes in her brief that the circuit court considered the records from Ohio at adjudication yet claims on appeal that the circuit court failed to consider them. Fourth, petitioner fails to show what evidence of her alleged compliance with the DHHR's services in Mingo County were not considered below. Fifth, other than merely stating such, petitioner fails to explain how the circuit court erred in adjudicating her as an abusing parent. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . [t]he argument must contain appropriate and specific citations to the record on appeal." Rule 10(c)(7) further provides that "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal." As we have repeatedly reminded litigants, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Accordingly, petitioner's assignments of error could be disposed of without any further analysis.

Nevertheless, upon our review of the record, we find the circuit court did not err in terminating petitioner's parental rights to D.S. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of the parental rights is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As mentioned above, the circuit court found that petitioner failed to participate in the terms of her post-adjudicatory improvement period and, therefore, failed to follow through with a reasonable family case plan. Indeed, there are only two mentions of petitioner's alleged compliance in the record—completing her psychological evaluation and submitting to one drug screen, for which she tested positive for fentanyl, methamphetamine, and heroin. The evidence clearly shows that petitioner failed to appear for hearings, failed to stay in contact with the DHHR and counsel, and failed to participate in services even minimally. In fact, the record shows that petitioner never attended drug treatment as indicated at the adjudicatory hearing. At the time of the dispositional hearing, petitioner's drug abuse remained untreated, and she had formed no bond

4

with D.S. as she had not exercised any supervised visitations. The circuit court correctly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for D.S.'s welfare. Petitioner's vague assertions of error offer nothing in contradiction of these findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 7, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton